PENNINGTON, Admx., et al., Appellants,

v.

OHIO CASUALTY INSURANCE COMPANY et al., Appellees.

[Cite as *Pennington v. Ohio Cas. Ins. Co.* (1989), 63 Ohio App.3d 527.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–1116.

Decided July 27, 1989.

528

*Kemp, Schaeffer & Rowe Co., L.P.A.,* and *Steven D. Rowe,* for appellants.

*Robert E. Frost & Assoc.* and *Gwenn S. Karr,* for appellee Ohio Casualty Insurance Co.

*Earl, Warburton, Adams & Davis* and *Ted L. Earl,* for appellee Hartford Insurance Co.

WHITESIDE, Judge.

Plaintiff-appellant, Peggy A. Pennington, Administratrix of the Estate of John W. Pennington, appeals from the judgment of the Franklin County Court

of Common Pleas, granting defendant Ohio Casualty Insurance Company's ("Ohio Casualty's") and Hartford Casualty Insurance Company's ("Hartford's") motions for summary judgment and raises this sole assignment of error:

"The trial court erred in granting appellee's motion for summary judgment as genuine issues of material fact exist and therefore appellees are not entitled to judgment as a matter of law."

Plaintiff brought this action as the result of Hartford's and Ohio Casualty's failure to pay benefits to her under two insurance contracts. Plaintiff's husband, John W. Pennington, died as a result of injuries he sustained in the parking lot of a west side Taco Bell. The decedent, along with four other men, was a passenger in a car driven by Robert Breech. While waiting in the "drive-through" of Taco Bell, an altercation occurred between a passenger in the Breech car and a passenger in the car in front of it. As a result, a man from the first car attacked the Breech car and the passengers in it with a large knife. This man repeatedly stabbed the top of the Breech car with the knife and penetrated the steel top at least twice. He also smashed the passenger's window.

All five occupants of the Breech car attempted to exit the car and reach a place of safety. Three of the five including the decedent were stabbed by the assailant. Two of the passengers witnessed the fatal stabbing and stated in their depositions that they felt the decedent was trying to calm the assailant. All of the survivors' statements reflect that the entire incident did not last very long.

After unsuccessful attempts to collect from Breech's insurance company, Hartford, and the victim's insurance carrier, Ohio Casualty, plaintiff brought suit to collect $5,000 for medical and funeral expenses under the medical benefits coverage of each policy. The trial court granted both defendants' motions for summary judgment in two separate decisions without stating any basis or reason.

By her sole assignment of error, plaintiff contends that the trial court erred in granting defendants' motions as there exists a genuine issue of material fact. Civ.R. 56(C) provides that a party's motion for summary judgment shall be granted if " * * * there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Furthermore, the nonmoving party is entitled to have the evidence construed most strongly in his or her favor.

Plaintiff contends that, based upon the evidence, a genuine issue of material fact exists as to whether the decedent was covered by the insurance policies

during the incident causing his death, thus entitling plaintiff to the benefits. The applicable provision in each policy is worded identically as follows:

"We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury:

"1. Caused by accident; and

"2. Sustained by **a covered person.**

"We will pay only those expenses incurred within 3 years from the date of the accident.

" **'Covered person'** as used in this Part means:

"1. You or any **family member:**

"a. while **occupying;** or

"b. as a pedestrian when struck by: a motor vehicle designed for use mainly on public roads or a trailer of any type.

"2. Any other person while **occupying your covered auto."**

Furthermore, both the Hartford and the Ohio Casualty policies define "occupying" as "mean[ing] in, upon, getting in, on, out, or off."

The decedent would be covered under the Hartford policy (Breech's policy) if his injuries and resulting death were caused by accident and while "occupying" the Breech car as "any other person." Likewise, under his own policy with Ohio Casualty, the decedent would be covered if his injuries and death were caused by accident and if he was "occupying a motor vehicle."

■ As the language of the applicable policy provisions is identical, they will be analyzed together. The first issue presented is whether decedent's injuries were "caused by accident." "Accident" is not defined in either policy and, therefore, we turn to the applicable case law interpreting that term. In the second paragraph of the syllabus of *Kish v. Central Natl. Ins. Group* (1981), 67 Ohio St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288, the court held:

"Absent any enforceable contractual provisions to the contrary, the determination of whether an occurrence is an 'accident' for purposes of uninsured motorist, family compensation, and accident insurance must be from the standpoint of the insured."

Furthermore, as the court reasoned at 48, 21 O.O.3d at 30, 424 N.E.2d at 293:

" 'When an insured is intentionally injured or killed by another, and the mishap is as to him unforeseen and not the result of his own misconduct, the general rule is that the injury or death is accidentally sustained within the

meaning of the ordinary accident insurance policy and the insurer is liable therefor in the absence of a policy provision excluding such liability. * * *'

"* * * '* * * While the injury may be intentionally inflicted by the aggressor, to the extent that the assault is unprovoked and/or unexpected from the injured person's standpoint the damages are just as accidental as if he had been negligently struck.'" (Citations omitted.)

Therefore, in determining whether the particular provisions of the Hartford and Ohio Casualty policies apply, we look at the incident from the perspective of the deceased victim. When looking at the unprovoked attack of the decedent by the assailant, the only reasonable conclusion is that, as to the decedent, it was an "accident" within the meaning of each policy. Witnesses stated in their depositions that the decedent was merely trying to calm the situation. There is no evidence to indicate that the decedent was the aggressor or that his own misconduct led to the attack. Thus, the injuries sustained by the decedent eventually leading to his death were unforeseen and accidental from his standpoint, and the first criteria under both policies is met. The parties are not contesting this issue.

■ The second requirement of both policies to recover reasonable medical and funeral expenses is that the injured person be "occupying" the vehicle at the time of the incident leading to his injuries. The word "occupying" as defined in each policy "means in, upon, getting in, on, out, or off."

■ If this definition is taken literally, "occupying" means anywhere "out" or "off" the vehicle, as the word "getting" does not modify either of these two words, but only the word "in." There is no conjunction before "getting in" as there would be required for the word "getting" to modify "out," "on," and "off" as well as "in." Accordingly, a person "out," or "off" of the vehicle need not be "getting" in or "getting" out or "getting" off, but is within the policy definition of "occupying" when he is "out" or "off" of the vehicle so long as there is a reasonable relationship to the vehicle at the time. The relationship here would be leaving the vehicle.

In *Robson v. Lightning Rod Mut. Ins. Co.* (1978), 59 Ohio App.2d 261, 13 O.O.3d 268, 393 N.E.2d 1053, this court thoroughly analyzed a policy definition of the term "occupying," which included "alighting from." We concluded at 264–265, 13 O.O.3d at 270, 393 N.E.2d at 1055:

"We believe that the determination of whether the vehicle was 'occupied' should be based on an analysis of the relationship between the vehicle and the claimant within a reasonable geographic perimeter, where a gray area exists concerning whether a person was 'in or upon, entering into or alighting from' an insured vehicle. We apply that rule for two reasons. First, while the

words 'in or upon, entering into or alighting from' do not appear to be ambiguous when taken in a vacuum, they are ambiguous when determining the scope of coverage in fact situations such as we have in this case. 'Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer.' *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95 [6 O.O.2d 56, 313 N.E.2d 844] (syllabus)."

This analysis was cited with approval by the Ohio Supreme Court in *Joins v. Bonner* (1986), 28 Ohio St.3d 398, 28 O.B.R. 455, 504 N.E.2d 61. Specifically, that court held, at 400, 28 O.B.R. at 457, 504 N.E.2d at 63, that a person is not finished "exiting" or "alighting from" a vehicle until that person " * * * reaches a place of safety * * *." Therefore, an important consideration is the immediate relationship the injured person had with the vehicle taking into account a reasonable geographic perimeter.

The *Joins* court further reasoned, op. cit., that the course of conduct of exiting a vehicle necessarily includes conduct which is "reasonably incident" to exiting the vehicle. Reaching a place of safety is reasonably incident to leaving a vehicle; therefore, where, as here, "occupying" is defined to include leaving the vehicle, "occupying" continues until a point of safety is reached. Although the policy definition of "occupying" herein is even broader than that in either *Robson* or *Joins,* those cases establish an applicable, if not exclusive, measure of the subject policy. We can conclude that the process of leaving a vehicle continues at least until the departing passenger has reached a place of safety.

Furthermore, the *Kish* court, *supra,* which determined that the decedent therein was not "occupying" the vehicle, recognized that "occupying" should be liberally construed in favor of the insured. The court determined, 67 Ohio St.2d at 52, 21 O.O.3d at 33, 424 N.E.2d at 295, that "[d]ecedent was not performing a task intrinsically related to the operation of the vehicle when he unsuccessfully sought to save his life by returning to his automobile." In other words, the decedent in *Kish* had completed his exit from the vehicle at the time he was shot and killed and was, in fact, attempting to reenter the car but had not yet reached it. While exiting a vehicle to reach a point of safety may be a "task intrinsically related to the operation of the vehicle," making an attempt to reenter the vehicle is not where the sole purpose is to reach a place of safety.

Defendants rely heavily upon *Kish;* however, the facts of *Kish* and the facts of this case are distinguishable. Here, the victim was not attempting to reenter a vehicle he had abandoned. The evidence indicates that, while all five men were still in the Breech car, the assailant began attacking the car with a

knife. In other words, the attack was on the car itself, as well as on all five occupants. The depositions of the four survivors indicate that all were scared and wanted to reach a place of safety, which was necessarily out of the car which was under attack.

In leaving the vehicle to reach a point of safety, all five occupants of the Breech car were performing a "task intrinsically related to the operation of the vehicle." It was clearly not safe for any of them, including decedent, to remain in the vehicle at that time. There is no indication that any of them had the intent to abandon the car permanently. Rather, they presumably exited the car with the intention of returning to the car when it was safe to do so. The question then becomes: What was the decedent's status at the time he was fatally injured; *i.e.*, was he "occupying" the vehicle as defined in the policies at that time?

Two of the witnesses were able to attest to decedent's conduct after the attack began. Hal O'Harra, an occupant of the Breech car, stated that decedent exited the car prior to him and that it appeared to him that decedent was attempting to calm the situation. Regarding how far decedent was from the car at the time he was stabbed, O'Harra specifically stated, at page 17 of his deposition:

"Q. Do you have any idea how far away from the car he was at the time he was stabbed, Mr. Pennington that is?

"A. Short distance but I don't know exactly how far. It's a very small parking lot.

"Q. Were you able to see from where you were in the car to where he was with the assailant?

"A. Yes.

"Q. And you can't estimate approximately how far that was?

"A. No, I don't know. Just a few feet or—"

Robert Breech also witnessed the attack on the decedent but was less clear about what he saw. As he described what he had seen, he used exhibits which, unfortunately, are not part of the record to illustrate the positions of the assailant and decedent. Although his distance estimates were confusing, Breech stated that the struggle occurred at a point even with his car.

There is a question of fact as to whether decedent was "occupying" the car when he sustained the injuries resulting in his death. In other words, if decedent was attempting to reach a point of safety, then he would still be in the process of leaving the vehicle even though he was out of it. Since both policies define "occupying" so as to encompass leaving the vehicle, decedent might be characterized as "occupying" the vehicle for purposes of the insur-

ance policies. Whether decedent was leaving the vehicle in an attempt to reach a place of safety is a question of fact because reasonable minds can reach different conclusions.

Both defendants rely heavily upon a portion of *Kish* which is not applicable to the case *sub judice*. In *Kish*, plaintiff was attempting to collect benefits under the uninsured motorist provision of the policy. According to that provision set forth in 67 Ohio St.2d at 49, 21 O.O.3d at 31, 424 N.E.2d at 293, of the *Kish* opinion, the injury for which benefits were sought must have been sustained as the result of an accident arising out of the "ownership, maintenance, or use of the *uninsured* vehicle." (Emphasis added.) Defendants, here, contend that decedent's injuries and resulting death did not arise out of the "ownership, maintenance, or use" of either vehicle.

At this time, plaintiff is not seeking to recover under the uninsured motorist provisions of either policy. In her brief plaintiff raises no issue pertaining to uninsured motorist coverage. The language in *Kish* requiring that injuries for which the benefits are sought arise out of the "ownership, maintenance or use" of the vehicle relates only to the uninsured motorist provision and does not apply here.

As stated previously, plaintiff is seeking to recover reasonable medical and funeral expenses incurred as the result of her husband's unfortunate death. The provision of each policy from which plaintiff seeks to recover requires only that the injuries are: (1) caused by accident, and (2) sustained by a person while "occupying" the vehicle. From the perspective of the decedent, his injuries and resulting death were accidental. Furthermore, there is a question of fact as to whether he was "occupying" the vehicle at the time of his injuries, making summary judgment inappropriate. Accordingly, plaintiff's sole assignment of error is well taken.

For the foregoing reasons, plaintiff's assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

REILLY AND YOUNG, JJ., concur.