Opinion issued November 24, 2004






     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00646-CV




EDWARD LEE McDONALD AND BOBBY J. ROBINSON, Appellants

V.

SOUTHERN COUNTY MUTUAL INSURANCE COMPANY, Appellee




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2002-00343




O P I N I O N

          In an insurance coverage bench trial arising from an auto-pedestrian accident,
the trial court rendered a judgment in favor of appellee, Southern County Mutual
Insurance Co. (Southern County), denying coverage. We hold that (1) appellants,
Edward Lee McDonald and Bobby J. Robinson, were not “occupying” a motor
vehicle at the time of their injuries and therefore did not qualify as insureds under the
insurance policy at issue; and (2) the accident did not arise out of the maintenance or
use of a motor vehicle. We therefore affirm. 
The Facts
          In August 2001, at about 9:30 p.m., McDonald drove a tractor, owned by
Robert Cooper. The tractor pulled a trailer, owned by All Points Holdings (“All
Points”), a trucking company. McDonald drove the tractor-trailer rig under All
Points’s authority. Robinson accompanied McDonald as a driver’s helper. While
traveling westbound on Interstate 10, approaching Katy, Texas, the tractor’s right
front tire blew out. McDonald pulled over and parked the rig in the grass on the side
of I-10, between I-10 and the service road. McDonald and Robinson tried to
telephone for help, but their cellular telephone did not work. 
          The two men walked away from the rig, and planned to walk until they reached
a place where they could seek assistance for repairing the flat tire. The men crossed
the I-10 westbound service road and proceeded westward along the north side of the
service road, in the direction of, and with their backs to, the traffic. Intending to
return to the vehicle later that evening, they left their personal belongings in the
tractor, including clothing, a briefcase, a log book, and a notebook. 
          About five minutes after beginning their journey along the feeder road, driver
Francisco Rangel struck the two men from behind. The impact caused injuries to
both men, although the record does not contain the details of their injuries. Both men
were unsure of the precise distance they had traveled before the impact. Robinson
testified they had walked “a few minutes,” but did not know how much distance they
had covered. McDonald testified they had walked “about five minutes or less,” for
“maybe 50 feet or better.” 
          Rangel carried the minimum limits of liability insurance coverage on his
car—$20,000 per person and $40,000 per accident. Southern County had issued a
Texas Truckers Policy to All Points that includes uninsured/underinsured motorist
(“UIM”) coverage for the tractor. McDonald and Robinson filed a claim for
underinsured motorist coverage against the Southern County policy, alleging that
Rangel negligently caused their injuries, and that they had exhausted the minimum
limits under Rangel’s liability policy. 
          Southern County’s UIM policy extends coverage to:
damages which an insured is legally entitled to recover from the owner
or operator of an uninsured motor vehicle because of bodily injury
sustained by an insured, or property damage caused by an accident. 
Part C of the policy defines an “insured” to include, in addition to the named insured,
designated beneficiaries, family members, and “any other person occupying a covered
auto.” The parties agree that neither McDonald nor Robinson is a named insured, a
family member, or a “designated person” under the policy. They further agree that
the tractor and trailer are “covered autos.” McDonald and Robinson claim that they
both qualify as “[a]ny other person occupying a covered auto.” The policy defines
“occupying” as “in, upon, getting in, on, out or off.”
The Procedural History 
          Southern County sued for a declaratory judgment denying coverage for
McDonald’s and Robinson’s claims. McDonald and Robinson counterclaimed
against Southern County for uninsured motorist coverage for their injuries. The trial
court realigned the parties for trial. The parties agreed to try the insurance coverage
portion of the suit to the court in a bench trial first, and later try the bodily injury
claims to a jury, if necessary. 
          After hearing the evidence, the trial court rendered a judgment that denied
insurance coverage and ordered that McDonald and Robinson take nothing on their
UIM claims. In a separate instrument, the trial court entered findings of fact and
conclusions of law. Pertinent to our analysis here, the trial court found:
4.       While westbound on Interstate 10 approaching Katy, Texas, the right front tire
of the tractor blew out.
 
5.       McDonald then stopped the tractor-trailer rig and parked it on the side of
Interstate 10, between the freeway and the service road.
 
6.       McDonald and Robinson did not attempt to repair or replace the blown-out tire
themselves, but tried to call All Points for assistance using a cell phone, which
did not operate.
 
7.       McDonald and Robinson then crossed the Interstate 10 westbound service road
and began to walk along the north side of the Interstate 10 service road (in the
direction of traffic, on the side of the service road opposite the freeway) in
search of a location where they could obtain or call for assistance to replace or
repair the flat tire.
 
8.       While walking alongside the service road, in the direction of and with their
backs to traffic, McDonald and Robinson were struck from behind by a vehicle
driven by Francisco Javier Rangel, and were injured.

* * *
 
14.     For McDonald or Robinson to be an “insured” within the scope of UIM
coverage, he had to be “occupying” the tractor or trailer at the time he suffered
a “bodily injury,” according to the definition of “insured” in part C. (“Who Is
An Insured”) of the TE 04 09D endorsement: 

You and any designated person and any family member of
either.
 
Any other person occupying a covered auto.
 
15.     Neither McDonald nor Robinson is a “designated person” in the policy that
Southern County issued to All Points.
 
16.     The TE 04 09D endorsement defines “occupying,” stating that it “means in,
upon, getting in, on, out or off.”
 
17.     McDonald and Robinson were not occupying the tractor or trailer at the time
they were struck by the underinsured motorist on the side of the freeway
service road.
 
18.     McDonald’s and Robinson’s injuries did not arise out of use of the tractor or
trailer. Their driving “use” had ceased. The blowout of the tractor tire and
resulting need for maintenance was a condition precedent to them being hit by
Rangel’s car while walking to obtain help, but their walk was not itself
“maintenance” of the vehicle and their ensuing auto-pedestrian accident was
not a consequence of maintenance.

Pertinent to this appeal, the trial court concluded:
 
1.       McDonald and Robinson were not occupying the tractor or trailer at the time
they were struck by the underinsured motorist on the side of the freeway
service road. 
 
2.       Because neither McDonald nor Robinson was occupying the tractor or trailer
at the time he suffered “bodily injury,” neither qualifies as an “insured” as
defined in the UM/UIM endorsement, and neither has UIM insurance under
Southern County’s policy. 
 
3.       McDonald’s and Robinson’s injuries did not arise out of the use of the tractor
or trailer.
 
4.       McDonald’s and Robinson’s driving “use” of the tractor had ceased at the time
of the auto-pedestrian accident that injured them. 
 
5.       The blowout of the tractor tire and resulting need for maintenance was a
condition precedent to McDonald and Robinson being hit by Rangel’s car
while walking to obtain help, but their walk was not itself “maintenance” of the
vehicle. 
 
6.       McDonald’s and Robinson’s auto-pedestrian accident, while en route to a
location where they could obtain assistance in repairing or replacing the tractor
tire, does not have the causal relationship to maintenance of the tractor
required by the phrase “arising out of.” 
 
7.       Supposing McDonald’s and Robinson’s injuries arose out of maintenance of
the tractor, that would not create UIM coverage for them because the policy’s
“arising out of” requirement is part of the policy’s grant of liability
coverage—not UIM coverage. 
 
8.       Even if the “arising out of” requirement in the policy’s grant of liability
coverage were also part of the UIM grant of coverage, McDonald and
Robinson would still have to qualify as “insureds” under the UIM
endorsement’s definition before that standard applied to them, and they cannot
do so because they were not “occupying” an insured auto when they suffered
“bodily injury.”

          On appeal, McDonald and Robinson contend that (1) Robinson and McDonald
were covered under the Southern County policy at the time of the accident as they
were “occupying” the tractor when the underinsured motorist hit them; or (2)
alternatively, Robinson and McDonald are insureds under state law, as they were
within a reasonable geographic proximity to the tractor, and engaged in an activity
necessarily related to the use or maintenance of the tractor.
The Standard of Review

          In an appeal from a bench trial, a trial court’s findings of fact have the same
weight as a jury’s verdict. Amador v. Berrospe, 961 S.W.2d 205, 207 (Tex.
App.—Houston [1st Dist.] 1996, writ denied). We review the legal and factual
sufficiency of the evidence by the same standards applied in reviewing evidence
supporting a jury’s answer. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). 
If a party attacks the legal sufficiency of an adverse finding on an issue as to which
he bears the burden of proof, then he must demonstrate on appeal that the evidence
conclusively established all vital facts in support of the issue. Sterner v. Marathon
Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). In reviewing such a “matter of law”
challenge, we examine the record for evidence that supports the challenged finding, 
ignoring evidence to the contrary. Id. If no evidence exists to support the finding,
we examine the entire record to determine if the contrary proposition is established
as a matter of law. Id.
          In reviewing a factual-sufficiency point, we consider all the evidence
supporting and contradicting the finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the finding is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In a bench trial, the trial
court, as factfinder, is the sole judge of the credibility of the witnesses. Southwestern
Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992,
writ denied). 
          We review de novo a trial court’s conclusions of law, and uphold them on
appeal if the judgment can be sustained on any legal theory supported by the
evidence. BMC Software Belgium v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); In
re Moers, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). An
appellant may not challenge a trial court’s conclusions of law for lack of factual
sufficiency, but we review the legal conclusions drawn from the facts to determine
their correctness. BMC Software Belgium, 83 S.W.3d at 794. 
The Rules of Construction
          We construe insurance policies in Texas according to the rules governing
contract construction. Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157
(Tex. 2003). If policy language has a certain or definite legal meaning or
interpretation, then it is not ambiguous and we construe it as a matter of law. Id. 
Whether a contract is ambiguous is a question of law. Id. An ambiguity does not
arise merely because the parties offer conflicting interpretations of the policy
language. Id. Rather, an ambiguity exists only if the contract is susceptible to two
or more reasonable interpretations. Id. If language in an insurance contract is
ambiguous or inconsistent, and susceptible to more than one reasonable
interpretation, a court resolves the uncertainty by adopting a construction that favors
the insured. National Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552,
555 (Tex. 1991). We thus construe an insurance policy strictly against the insurer and
in favor of coverage. Barnett v. Aetna Life Ins., 723 S.W.2d 663, 666 (Tex. 1987).The Term “Occupying” in the Uninsured Motorist Policy
          McDonald and Robinson contend that the evidence conclusively establishes
that they were “occupying” a motor vehicle at the time of their injuries, so as to
qualify as insureds under the Southern County uninsured policy. The uninsured
policy defines “occupying” as: “in, upon, getting in, on, out or off.” Texas cases have
construed the term “occupying” under various insurance policy provisions. As set
forth below, the courts of appeals in Fulton (walking in a parking lot) and Ferguson
(grabbing the handle of a different car for support) have held, in comparable
circumstances to this case, that the claimants were not “occupying” their vehicles at
the time of their injuries.
          In Fulton v. Texas Farm Bureau Ins. Co., the Dallas Court of Appeals held that
a claimant was not “occupying” an insured car and therefore was not covered under
the policy, when he walked away from a vehicle, across a parking lot, to seek police
assistance. 773 S.W.2d 391, 392 (Tex. App.—Dallas 1989, writ denied) (affirming
summary judgment for insurance carrier). Fulton was a passenger in a car whose
driver had argued with a driver of another car. Id. Both drivers pulled into a liquor
store parking lot and continued arguing. Id. The driver of the other car rammed her
car into the car Fulton occupied and drove away. Id. Fulton got out of the car to call
the police. Id. As Fulton walked through the parking lot, the driver of the other car
drove back into the lot and struck Fulton with her car. Id. Fulton sought to recover
uninsured motorist compensation and personal injury protection, asserting that he had
been occupying the insured car. Id. The policy defined the term “occupying” as “in,
upon, getting in, on, out or off”—a definition identical to the one in this case. Id. 
The court of appeals held that Fulton was not occupying the car:
By no stretch of the imagination could Fulton be said to have been “in,
upon, getting in, on, out or off” of Bartek’s car. Fulton was walking
about freely in the parking lot at the time he was struck by the alleged
“uninsured” car.

Id. (emphasis added). The facts in this case are analogous to the facts in Fulton. Like
the claimant in Fulton, McDonald and Robinson too were “walking about freely”
down the service road to seek assistance. See id.
          In Ferguson v. Aetna Cas. & Sur. Co., the Waco Court of Civil Appeals
construed the term “occupying” in the context of a medical payments provision that
provides medical payments for a named insured who sustains “bodily injury, caused
by accident, while occupying or through being struck by an automobile.” 369 S.W.2d
844, 845 (Tex. Civ. App.—Waco 1963, writ ref’d) (affirming summary judgment for
insurance carrier). The policy defined the term “occupying” to be “in or upon or
entering into or alighting from an automobile,” a definition different from the
provision in this case. Id. In Ferguson, a woman left a beauty shop and walked on
a board leading into the parking area, toward her car. Id. She slipped, grabbed the
handle of a different car for support, fell off the board, and broke both legs. Id. The
Waco court denied recovery, holding that she was not “occupying” the car:
We think the language employed in the coverage of the insurance
policies reasonably plain and unambiguous; and to say that plaintiff was
“in or upon” the automobile she had her hand on would be placing a
distorted meaning, and unreasonably strained construction upon the
described coverage. If plaintiff had been entering or alighting from the
car she had her hand upon, at the time of her injury, a different situation
would be presented. We cannot say she was “in or upon” the car simply
because she put her hand upon it to steady her walk around it on the way
to her own car from the beauty parlor. 

Id. at 845-46. 
          Moreover, this year, two courts of appeals have addressed the definition of
“occupying” in the insurance coverage context. See The Insurance Co. of the State
of Pennsylvania v. Pearson, No. 07-03-0340-CV, 2004 WL 2053285 (Tex.
App.—Amarillo Sept. 07, 2004, no pet.) (mem. op.); McKiddy v. Trinity Lloyd’s Ins.
Co., No. 05-03-00908-CV, 2004 WL 639639 (Tex. App.—Dallas April 01, 2004, pet.
denied) (mem. op.). 
          In Pearson, the Amarillo Court of Appeals reversed a summary judgment in
favor of a claimant and held that Pearson did not qualify as an “insured” under the
policy because he was not “occupying” the vehicle. Pearson, 2004 WL 2053285, at
*1. Pearson, who worked for an electric company, parked the company truck in an
emergency lane on Interstate 75. Id. While performing his employment duties
outside the parked truck, a taxi struck him from behind and killed him. Id. The court
concluded that there was no evidence of a nexus between the truck and Pearson’s
injuries:
In essence, getting in, getting on, getting off and getting out connote not
only action immediately directed towards entering or exiting the auto
but also an ongoing yet incomplete process. For instance, there is a
difference between getting out of a car (a process that has begun but has
yet to be completed) and being out of a car (a completed process). 
According to the policy the former is covered under the definition of
“occupying,” but the latter is not.
Id. at *3. 
          In McKiddy, the Dallas Court of Appeals upheld a summary judgment in favor
of the insurance company, holding that McKiddy did not qualify as an “insured”
under the policy because he was not “occupying” the vehicle. McKiddy, 2004 WL
639639, at *1. McKiddy was a passenger in a car that skidded off an icy road. Id. 
After exiting the car, McKiddy was struck by another car that skidded off the road. 
Id. McKiddy sought coverage under the underinsured motorist policy covering the
car in which he had been a passenger. Id. McKiddy testified that he was “no more
than ten feet” from the covered vehicle. Id. at *2. In assessing the existence of a
causal relationship between the vehicle and the injuries, the court considered such
indicia as the physical proximity between the injured person and the vehicle, the
amount of time during which the injured person was outside the vehicle, and whether
an impact with the covered vehicle caused the injuries. Id. The court held that
McKiddy produced no evidence showing how long he had been out of the covered
vehicle before being struck, and no evidence showing that his injuries related to an
impact with the covered vehicle. Id. Accordingly, the court held that McKiddy failed
to raise a fact issue as to whether “a causal connection” between his injuries and the
covered vehicle existed. Id. Furthermore, the court held that the contract
term—“occupying”—is not ambiguous as a matter of law. Id. at *3.


 
          In each of these cases, the courts of appeals have affirmed the denial of
coverage, based on holdings that “occupying” requires a causative nexus with the
vehicle, and the claimants in these cases lacked such a nexus. Here, the trial court
similarly found that the accident lacked a causative nexus with the vehicle covered
by the insurance policy—i.e., once Robinson and McDonald began their foot journey,
they ceased to be vehicle-oriented. The evidence in the record supports the trial
court’s findings: the men had crossed the road, and were proceeding away from the
vehicle on the other side, with an intent to return to it later, rather than immediately. 
We thus defer to the trial court as fact finder and hold that legally and factually
sufficient evidence supports the trial court’s conclusion that the men were not
“occupying” the vehicle under the policy. 
“Getting In” or “Getting In, Getting On, Getting Out or Getting Off”
          McDonald and Robinson also assert that the trial court improperly ignored the
placement of the word “getting” in the defining phrase and ignored the lack of
commas following the word “getting.” They contend that the word “getting” modifies
only the word “in,” and not “on, out or off.” They rely on Pennington v. Ohio
Casualty Insurance Company, in which the Ohio Court of Appeals construed an
identical definition of the term “occupying.” 579 N.E.2d 507, 509 (Ohio App. 1989)
(reversing summary judgment and remanding). Pennington died as a result of injuries
sustained while waiting in a drive-through line at a Taco Bell. Id. at 508. A man
from another car in front of the line attacked Pennington’s car, stabbed the roof with
a knife, and smashed the window. Id. Pennington exited the car to attempt to reach
a place of safety. Id. 
          Pennington’s injuries would have been covered under the policy if he “was
occupying a motor vehicle” at the time of the accident. Id. at 509. The court held
that the word “getting” modifies only the word “in,” not the phrase “on, out or off”: 
If this definition is taken literally, “occupying” means anywhere “out”
or “off” the vehicle, as the word “getting” does not modify either of
these two words, but only the word “in.” There is no conjunction before
“getting in” as there would be required for the word “getting” to modify
“out,” “on,” and “off” as well as “in.” Accordingly, a person “out,” or
“off” of the vehicle need not be “getting” in or “getting” out or “getting”
off, but is within the policy definition of “occupying” when he is “out”
or “off” of the vehicle so long as there is a reasonable relationship to the
vehicle at the time. The relationship here would be leaving the vehicle.

Id. at 509. The court thus concluded that “the process of leaving a vehicle continues
at least until the departing passenger has reached a place of safety,” and that the
evidence presented raised a fact issue precluding summary judgment. Id. at 510-11. 
          We note that Texas courts do not agree with the Ohio Court’s interpretation of
“getting” in interpreting the Texas UIM policy. See Pearson, 2004 WL 2053285, at
*3; McKiddy, 2004 WL 639639, at *2. More importantly, Pennington is
distinguishable from the present case because it was an appeal from a summary
judgment. Here, however, the trial court rendered judgment after trial on the merits,
and we defer to the trial court’s findings of fact. The trial court in this case found that
McDonald and Robinson were not “occupying” the vehicle. The trial court thus
implicitly found that the claimants were beyond a reasonable proximity to the vehicle,
and the record contains evidence to support that finding. Robinson testified that they
walked from the shoulder of the freeway, across the “feeder road,” over to the grass,
to the opposite side of the feeder road. Although they were unsure of the exact
distance, Robinson testified they had walked “a few minutes,” and McDonald
testified they had walked “about five minutes or less,” for “maybe 50 feet or better.” 
We hold that the evidence supports the trial court’s finding that McDonald and
Robinson were not “occupying” the vehicle at the time of their injuries under either
reading of “getting” in the definition of “occupying.” Based on the trial court’s
findings of fact, the trial court properly denied coverage in this case. 
          Relying on additional cases from other jurisdictions, McDonald and Robinson
also suggest that we construe the term “occupying” to include an analysis of whether
the claimant has a “reasonable relationship” with the vehicle. They rely on Macchi
v. Connecticut Gen’l Ins. Co., in which the New Jersey Superior Court Appellate
Division held that a motorist, injured after she left her car to help an overturned
vehicle, was “occupying” her car for purposes of the UM/UIM endorsement. 804
A.2d 596, 600 (N.J. Super. Ct. App. Div. 2002). In Macchi, the claimant stepped out
of her Corvette on the side of the road, left the engine running, the lights on, her purse
in the car, and told her son to call the police. Id. at 598. The court found that the
claimant was “occupying” the vehicle; therefore, she was entitled to coverage. Id.;
see also General Acc. Ins. Co. v. Olivier, 574 A.2d 1240 (R.I. 1990) (holding that
claimant, who was shot 117 feet away while waiting to speak to police, was
“occupying” vehicle); Utica Mut. Ins. Co. v. Contrisciane, 473 A.2d 1005 (Pa. 1984)
(holding that driver, who was injured while walking 97 feet from vehicle to retrieve
items in response police officer’s request, was “occupying” vehicle). McDonald and
Robinson contend that Texas law should follow these jurisdictions, and that we
should determine that “occupying” ceases only when the vehicle occupant reaches a
place of safety. 
          We observe that, in the context of a different insurance provision, the Texas
Supreme Court recently held that an injury that occurred when a claimant’s foot
became entangled with his truck’s door, while he exited the truck, was a “motor
vehicle accident,” thereby entitling him to personal injury protection (PIP) coverage. 
Texas Farm Bureau Mut. Ins. Co. v. Sturrock, No. 02-0069, 2004 WL 1908330, at *4
(Tex. Aug. 27, 2004). In footnotes eleven and twelve, the Sturrock court collected
cases from across the nation, in which courts found coverage for accidents occurring
within a reasonable proximity to the vehicle, and denied coverage for accidents
occurring beyond a reasonable proximity to the vehicle. See id. at *4 n.11, 12 (listing
cases and fact patterns). Among those favorably cited with a fact pattern similar to
the present case is Rednour v. Hastings Mutual Insurance Company, 468 Mich. 241,
661 N.W.2d 562 (2003) (reversing summary judgment). In Rednour, the claimant
was approximately six inches away from his car and was walking toward the rear of
his car to change a flat tire when he was struck by another car. Id. at 244, 661
N.W.2d at 564. The Supreme Court of Michigan held that the claimant was not
occupying his vehicle and thus was not entitled to PIP coverage. Id. at 251, 661
N.W.2d at 568. 
          In Sturrock, the Texas Supreme Court observed that these cases often turn on
whether the vehicle was a causative factor in the injury. Sturrock, 2004 WL 1908330,
at *4. Texas precedent has not imposed an additional “place of safety” requirement
beyond the traditional causation analysis. Here, the trial court found that the vehicle
was not a causative factor in McDonald and Robinson’s injuries. We decline to read
“occupying” so broadly as to confer coverage, as a matter of law, any time an
occupant who has exited the vehicle has not reached a “place of safety.” 
“While Occupying” vs. “Occupying”
          The claimants further contend that the absence of the word “while”
immediately before the word “occupying” requires the court to give a broader
meaning to “occupying.” Throughout the policy, Southern County uses the phrase
“while occupying.” For example, the exclusion section provides:
We do not provide Uninsured/ Underinsured Motorists Insurance for any
person:
a.For bodily injury sustained while occupying, or when
struck by any motor vehicle. . . which is not insured for
coverage under this policy. 

The claimants assert that failing to give the term “occupying” a broader meaning that
“while occupying” makes the term “while” “mere surplusage.” A dictionary defines
“occupy” as “to fill up (space or time).” Webster’s II New College Dictionary
(1995 ed.). 
          The parties concede that no Texas case has considered “while” in this context. 
As Southern County points out, “ ‘while’ primarily serves the English language as a
conjunction, connecting clauses or phrases in a sentence,” and thus is not necessary
in connection with defining a term. We agree with Southern County that the omission
of “while” does not inform as to the meaning of “occupying.” 
“Arising Out of the Maintenance or Use” of the Vehicle and Public Policy
          The Southern County policy outlines the scope of coverage as follows:
We will pay damages which an insured is legally entitled to recover
from the owner or operator of an uninsured motor vehicle because of
bodily injury sustained by an insured or property damage causes [sic] by
an accident. The owner’s or operator’s liability for these damages must
arise out of the ownership, maintenance or use of the uninsured motor
vehicle. 

It is undisputed that Rangel, the uninsured motorist, was using his vehicle when he
drove down I-10 and struck the claimants; thus, the damages arose out of the use of
the uninsured’s (Rangel) motor vehicle. The Southern County policy does not
address the extent to which UIM coverage exists for damages arising out of the
maintenance or use of the insured’s vehicle. McDonald and Robinson contend,
however, that their damages arose out of the use of the insured’s (McDonald’s and
Robinson’s) motor vehicle. 
          Article 5.06-1 of the Texas Insurance Code provides a basis for coverage
arising out of the maintenance or use of “any” motor vehicle, not just the maintenance
or use of the uninsured vehicle:
No automobile liability insurance . . . covering liability arising out of the
ownership, maintenance, or use of any motor vehicle shall be delivered
or issued for delivery in this state unless coverage is provided therein or
supplemental thereto, in at least the limits described in the Texas Motor
Vehicle Safety-Responsibility Act, under provisions prescribed by the
Board, for the protection of persons insured thereunder who are legally
entitled to recover damages from owners or operators of uninsured or
underinsured motor vehicles because of bodily injury, sickness, or
disease, including death, or property damage resulting therefrom. 

Tex. Ins. Code Ann. Art. 5.06-1(1) (Vernon Supp. 2004-2005) (emphasis added).
          It is unclear from McDonald’s and Robinson’s brief whether they seek a
holding that broadens the language of the UIM policy to comport with the
statute—and essentially places “occupiers” in the same position as that of first-party
insureds—or one that defines the term “occupying” to include maintenance of the
vehicle. Under either proposed construction, however, the evidence supports the trial
court’s finding that the injuries did not “arise out of” the use or maintenance of the
tractor or trailer. The trial court found as follows:
McDonald’s and Robinson’s injuries did not arise out of the use of the
tractor or trailer. Their driving “use” had ceased. The blowout of the
tractor tire and resulting need for maintenance was a condition precedent
to them being hit by Rangel’s car while walking to obtain help, but their
walk was not itself “maintenance” of the vehicle and their ensuing auto-pedestrian accident was not a consequence of maintenance. 

McDonald and Robinson contend that trial court’s findings are incorrect because,
under the Federal Motor Carrier Regulations Act, they remained on duty during the
time they sought assistance. See 49 C.F.R. § 395.2(6) (“On duty time shall include 
. . . All time repairing, obtaining assistance, or remaining in attendance upon a
disabled commercial motor vehicle.”). They left their personal belongings in the
tractor, including clothing, a briefcase, log book, and notebook, and intended to
return to their rig later that evening after obtaining assistance. The tractor contained
“sleepers,” if they needed to sleep in the rig that night. 
          Assuming that Article 5.06-1(1) requires the broad assessment of the policy
language that they suggest, McDonald and Robinson factually do not prevail here,
because the evidence supports the trial court’s findings that their auto-pedestrian
accident did not arise out of the maintenance or use of the vehicle. McDonald and
Robinson were not in the process of changing the flat tire. Instead, they had parked
the tractor on the side of the highway and had walked across the service road in the
grass “about five minutes or less,” for “maybe 50 feet or better.” Accordingly, the
evidence supports the trial court’s finding that the claimants’ foot journey was not
“maintenance” of the rig. 
          The claimants note that other jurisdictions favor a broad construction of
“arising out of” to encompass persons who are walking or standing a considerable
distance from their vehicle.


 McDonald and Robinson do not prevail, however, under
Texas precedent. In Mid-Century Ins. Co. v. Lindsey, the Texas Supreme Court held:
For liability to “arise out of” the use of a motor vehicle, a causal
connection or relation must exist between the accident or injury and the
use of the motor vehicle. The use required is of the vehicle qua vehicle,
rather than simply as an article of property. Whether a person is using
a vehicle as a vehicle depends not only on his conduct but on his intent. 

997 S.W.2d 153, 156 (Tex. 1999) (citations omitted). The Lindsey court outlined the
following test to determine whether an injury “arises out of the use” of a motor
vehicle for purposes of auto liability insurance coverage:
For an injury to fall within the “use” coverage of an automobile policy (1) the
accident must have arisen out of the inherent nature of the automobile, as such,
(2) the accident must have arisen within the natural territorial limits of an
automobile, and the actual use must not have terminated, (3) the automobile
must not merely contribute to cause the condition which produces the injury,
but must itself produce the injury.

Id. at 157. McDonald and Robinson do not meet these three factors. First, the
accident arose out of the inherent nature of their pedestrian journey, not from their
interaction with the tractor. Second, they terminated the tractor’s “actual use” when
they drove into the grass, parked the tractor, turned the engine off, and walked
beyond the “natural territorial limits” of the tractor. Third, the tractor did not “itself
produce the injury.” Instead, the tractor’s flat tire merely contributed to the condition,
or the walk down the highway, that produced the injury. Under these factors,
McDonald’s and Robinson’s injuries do not arise out of the use or maintenance of the
tractor. See id. 
          Finally, Robinson contends that public policy demands a liberal interpretation
of the UIM statute. The purpose of PIP and UIM coverage is to protect conscientious
drivers from irresponsible parties, and courts liberally construe the PIP and UIM
statutes. See Sturrock, 2004 WL 1908330, at *3; Stracener v. United Serv. Auto.
Ass’n, 777 S.W.2d 378, 382 (Tex. 1989) (stating that UIM article should be liberally
construed).
          We agree, but even if we assume a broad interpretation of the UIM policy for
public policy reasons, as we have, the evidence nonetheless supports the trial court’s
findings that McDonald and Robinson’s injuries did not arise out of the use or
maintenance of the tractor or trailer under the standards set forth by the Texas
Supreme Court.
Conclusion
          We hold that the evidence supports the trial court’s findings that (1) McDonald
and Robinson were not occupying the tractor or trailer at the time the underinsured
motorist hit them, and (2) their injuries did not arise out of the use or maintenance of
the tractor or trailer. Based upon these findings, the trial court properly declared that
no coverage exists under the UIM policy, and properly rendered a take nothing
judgment on the claims against the policy. We therefore affirm the judgment of the
trial court. 
 
 
 
                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Taft, Jennings, and Bland.