976 So.2d 1005 (2007)
Keri Adrienne ROBERTS
v.
AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY.
1050616.
Supreme Court of Alabama.
June 29, 2007.
R. Edward Massey of Clay, Massey & Associates, P.C., Mobile, for appellant.
Edward B. McDonough, Jr., and Deena R. Tyler, Mobile, for appellee.
PER CURIAM.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(E), Ala. R.App. P., and Lambert v. Coregis Ins. Co., 950 So.2d 1156 (Ala.2006).
SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
COBB, C.J., dissents.
COBB, Chief Justice (dissenting).
I respectfully dissent from the majority's decision to affirm the summary judgment in favor of American National Property and Casualty Company. I believe that a jury question exists as to whether Keri Adrienne Roberts was "occupying" a vehicle, as that term is defined by the insurance policy covering the vehicle, at the time she sustained her injuries.
On November 21, 2001, Roberts was a passenger in a Ford Escort automobile owned by Roberts's mother and driven by Roberts's sister, Heather. Carrie Sells, a friend of Roberts's, was also a passenger in the Escort. As they traveled northbound on Lott Road in Mobile County they were behind a vehicle being operated by Eric Flint. They noticed that Flint's vehicle was swerving on the roadway, so they slowed to allow a safe distance between the Escort and Flint's vehicle. After they had followed Flint's vehicle for approximately one to two miles, Flint veered into the southbound lane and struck an oncoming vehicle. Although the Escort was traveling three to four car lengths behind Flint's vehicle, Heather, in an effort to avoid hitting the vehicle Flint had struck, which was spinning toward the Escort, drove the Escort into the ditch to the right of the lane in which she was traveling. The Escort did not make contact with either vehicle involved in the collision, and Roberts was not injured when Heather drove the Escort into the ditch.
After determining that no one in the Escort was injured, Roberts, Heather, and Sellers got out of the Escort. Heather and Sellers walked to the car that was struck by Flint's vehicle to assist the driver, and Roberts walked to Flint's vehicle to assist Flint. Flint's vehicle was located in the roadway on the opposite side of the road and approximately two to three car lengths down the road from the Escort. Roberts opened the driver's door of Flint's vehicle and took the keys out of the ignition. She tried to converse with Flint, but Flint was incoherent; he was swaying back and forth. Roberts had to hold the *1006 door open while she checked on Flint because the door would not stay open on its own. After she had stood next to Flint's vehicle for approximately two to three minutes, Roberts asked Heather to get Roberts's cell phone from the Escort so they could call emergency 911. As Roberts was telling Heather to get the cell phone, she was struck by an automobile driven by Karen Ann Vickers.
Roberts, who was eight months pregnant, was transported from the accident scene by helicopter to the University of South Alabama Medical Center, where she was treated for her injuries. Two days later, on November 23, 2001, she delivered; the child was stillborn.
On November 14, 2003, Roberts sued Vickers, Flint, and American National in the Mobile Circuit Court. American National insured both the vehicle Roberts owned as well as the Escort in which she was a passenger on November 21, 2001. In her original complaint, Roberts sought benefits under the uninsured-motorist coverage relating to the American National policy covering her vehicle. After Roberts filed her complaint, American National settled with Roberts and tendered the policy limits for uninsured-motorist benefits under the policy covering Roberts's vehicle, plus expenses and reimbursements. Roberts and American National filed a joint stipulation for dismissal of American National as a defendant on February 2, 2004.
On February 19, 2004, Roberts filed an amended complaint, naming American National as a defendant and seeking uninsured-motorist coverage under the American National policy covering the Escort. That policy contains the following provision:

"PART IVUNINSURED MOTORIST

"COVERAGE JUNINSURED MOTORIST COVERAGE
"We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and result from the ownership, maintenance, or use of the vehicle. . . . "
The policy provides the following definition for "insured person":
"`Insured person' means:
"(a) you or a relative;[[1]]
"(b) any other person while occupying your insured car if such use is with the scope of your permission;. . . . "
Likewise, the policy states: "`Occupying' means in, on, getting into, or out of."
On August 17, 2005, American National moved the trial court for a summary judgment as to the claim asserted against it in Roberts's amended complaint, which the trial court granted on January 10, 2006. Roberts filed her appeal with this Court on February 13, 2006. On August 7, 2006, this Court remanded the case for the trial court to enter a Rule 54(b), Ala. R. Civ. P., certification, making the judgment final. The appeal was returned to this Court on August 28, 2006.
On appeal, Roberts argues that the trial court erred in entering a summary judgment in favor of American National because, she says, the trial court incorrectly held that Roberts was not "occupying" the Escort when she sustained her injuries, as that term is defined by the insurance policy. *1007 Specifically, Roberts argues that under the terms of the policy she was "occupying" the Escort when she was struck by Vickers's automobile, even though she was outside the vehicle and standing in the roadway alongside Flint's vehicle.
In construing terms in an insurance contract, this Court must be mindful of the principle that "[a] contract of insurance will be construed strictly against the insurer and liberally in favor of the insured. Ambiguous provisions of an insurance policy will be construed most strongly against the insurer and in favor of the insured." Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 695 (Ala.2001).
To support her argument that she was "occupying" the Escort when she was struck by Vickers's vehicle, Roberts presents a grammatical argument. She cites Oscar W. Larson, Co. v. United Capitol Insurance Co., 64 F.3d 1010, 1013 (6th Cir.1995), for the rule that "[i]n a sequence separated by commas, a modifier runs to the end of the phrase, or until the next comma." Thus, she contends, "getting" modifies only "into" in the definition of "occupying" in the policy and not "out of." She cites Pennington v. Ohio Casualty Insurance Co., 63 Ohio App.3d 527, 579 N.E.2d 507 (1989), in which the Court of Appeals of Ohio was faced with a question involving a policy that defined "occupying" as "`mean[ing] in, upon, getting in, on, out or off.'" 63 Ohio App.3d at 530, 579 N.E.2d at 508. In Pennington, the Court of Appeals of Ohio stated:
"If this definition [of `occupying'] is taken literally, `occupying' means anywhere `out' or `off' the vehicle, as the word `getting' does not modify either of these two words, but only the word `in.' There is no conjunction before `getting in' as there would be required for the word `getting' to modify `out,' `on,' and `off' as well as `in.' Accordingly, a person `out,' or `off' of the vehicle need not be `getting' in or `getting' out or `getting' off, but is within the policy definition of `occupying' when he is `out' or `off' of the vehicle so long as there is a reasonable relationship to the vehicle at the time. The relationship here would be leaving the vehicle."
63 Ohio App.3d at 531, 579 N.E.2d at 509.
I am not persuaded by Roberts's argument. Roberts's interpretation of the term "occupying" is limitless; it would allow coverage for an individual who was walking to and from the insured vehicle even if the vehicle were miles away. This is precisely the "strained or twisted reasoning" this Court in Twin City Fire Insurance Co., supra, counseled against using to create an ambiguity in an insurance policy. 817 So.2d at 692. Considering the word "occupying" "in the context of all other provisions," 817 So.2d at 691, I believe the intent of the contracting parties to this insurance policy was to provide coverage to an individual getting into or out of a vehicle.
In its summary-judgment order, the trial court cited this Court's decision in Cook v. Aetna Insurance Co., 661 So.2d 1169 (Ala.1995). In Cook, this Court was called upon to construe the meaning of the term "occupying" in the context of an uninsured-motorist provision. In Cook, the policy defined "occupying" as "`in, upon, getting in, on, out or off.'" 661 So.2d at 1171. Cook, an inmate at the Demopolis city jail, was allowed to work daily as a welder for a local company through a work-release program. Each day he walked across the street to a convenience store to get coffee for his vacuum bottle before the owner of the company arrived to take him to his welding job. On the morning in question, he had walked across the street to get coffee but had left his jacket and lunch box in the jail. After leaving the convenience store, Cook realized *1008 that the owner's vehicle was idling in the parking area in front of the jail. When he was approximately one foot from the owner's vehicle, he was struck by another vehicle. His lunch box and jacket were still in the jail. Cook sued the driver of the vehicle that hit him and the insurance company that insured the welding company, seeking damages under the uninsured-motorist provision of the policy covering the vehicle belonging to the welding company. Viewing all the facts in Cook's favor, this Court concluded that he was not "getting in" the vehicle at the time he was struck by another vehicle. This Court in Cook relied on Testone v. Allstate Insurance Co., 165 Conn. 126, 328 A.2d 686 (1973), in which the Connecticut Supreme Court held that the act of approaching the door of an automobile with the intent to enter the vehicle is not equivalent to entering the automobile. This Court stated:
"While we do not believe that Alabama should adopt a rigid requirement of physical contact, we agree with the authorities cited above that the act of `getting in' or entering a vehicle must be distinguished from approaching the vehicle, as well as from the act of preparing to enter the vehicle."
661 So.2d at 1173.
The best evidence in Cook's favor showed him at least a foot away from the owner's vehicle, and it was clear that he was not approaching the vehicle to get in it. Instead, he would have first had to enter the city jail to retrieve his lunch box and jacket.
In its order, the trial court cited only Cook in support of its conclusion that the definition of "occupying" in the American National policy was unambiguous and that Roberts was not occupying the Escort when she was struck by Vickers's vehicle. Given that Cook addressed the question of the meaning of the term "occupying" as it related to getting into a vehicle, I do not believe it is determinative of the issue presented to this Court.
This Court's decision in Lambert v. Coregis Insurance Co., 950 So.2d 1156 (Ala. 2006), is more germane to the question of how the term "occupying" should be construed in this case. In Lambert, an employee was standing between his company vehicle and another vehicle owned by his employer. An oncoming vehicle swerved off the road and hit the employee. The employee became entangled in the side mirror of the vehicle that had struck him, and he was dragged several feet until he hit the bumper of his company vehicle, at which point he rolled underneath the company vehicle. The employee sued the insurer of his company vehicle seeking underinsured-motorist ("UM") coverage. The policy defined an insured for UM purposes as "`[a]nyone else "occupying" a covered "auto" or a temporary substitute of a covered "auto."'" 905 So.2d at 1159. The policy also defined "occupying" as "`in, upon, getting in, on, out or off.'" 950 So.2d at 1159. In its analysis, the Court stated:
"It should be noted at the outset that the word `getting' appears to modify the prepositions `in, on, out, or off' in the policy provision defining `occupying' because the policy could not possibly cover everyone who was `out' or `off' the vehicle. See Rohlman v. Hawkeye-Sec. Ins. Co., 207 Mich.App. 344, 351, 526 N.W.2d 183, 186 (1994) (concluding that `the parties could not realistically have intended that any stranger who is injured in an accident involving the covered vehicle and an uninsured motorist would be occupying the covered auto if it could only be shown that the stranger was somewhere "off" the vehicle, or "out" of the vehicle')."
Lambert, 950 So.2d at 1160. Therefore, here, as in Lambert, the prepositions *1009 "into" and "out of" both describe the word "getting" in the definition of "occupying" in the policy covering the Escort.
Although both Cook and Lambert provide some guidance in this matter, both are easily distinguishable from the case presently before us. In Cook, the inmate never "occupied" the vehicle. Similarly in Lambert, the employee parked his vehicle some three and a half hours before the accident occurred and had only lifted a jug of water out of the vehicle immediately preceding the accident.
As this Court noted in Lambert, "Alabama has not adopted a specific test under which to examine the phrase `in, upon, getting in, on, out or off' in order to determine whether a person is `occupying' a vehicle in the context of the insurance agreement at issue in the case." Lambert, 950 So.2d at 1160. Other jurisdictions, however, have adopted various tests to determine whether an individual was "occupying" a vehicle in the context of an insurance policy.[2] "The majority of jurisdictions hold that the meaning of the term `occupying' must be determined on a case-by-case basis, depending on the facts of the accident and the use of the vehicle, and that there must always be some causal connection between the injuries and the use of the vehicle." 950 So.2d at 1156.
Addressing a similar situation, the Supreme Judicial Court of Maine concluded that uninsured-motorist coverage extended to an individual who was struck by another vehicle while that individual was not in or in proximity to the insured vehicle. In Genthner v. Progressive Casualty Insurance Co., 681 A.2d 479 (Me.1996), an automobile was rear-ended on a bridge by a truck. The driver of the automobile pulled his vehicle to the side of the road after crossing the bridge while the truck remained idling on the bridge. Two of the passengers of the automobile got out of the automobile and walked approximately 100 yards toward the truck to get the license number of the truck. As they neared the truck, the driver "revved" the engine of the truck and then "floored it" across the bridge, swerving toward the passengers as he approached. The truck struck one of the passengers, causing his injuries. The truck sped away and was never identified. Like the policy that is the subject in this case, the policy there provided uninsured-motorist coverage for the vehicle in which *1010 the injured individual had been a passenger and defined "occupying" as "`in, on, getting into, out of or off.'" 681 A.2d at 480. The Supreme Judicial Court of Maine held that "[a]n insured carefully reading the policy language could not determine whether the plaintiff's claim is covered." 681 A.2d at 480. The Genthner Court further held:
"A reasonable reading of the policy would include Genthner's claim. He was a passenger in the insured vehicle at the time of the collision. But for the collision, he would have remained in the car. His efforts to assist the driver in securing the license number of the other vehicle involved only a temporary interruption of the trip and was directly and reasonably related to the operation and use of the insured vehicle."
681 A.2d at 482. Similarly, the facts in this case support an inference that but for Flint's vehicle colliding with the oncoming vehicle causing the driver of the vehicle in which Roberts was a passenger to swerve into the ditch, Roberts would have remained in the car. It was both reasonable and foreseeable that Roberts would get out of the vehicle to assist Flint, and her actions "involved only a temporary interruption of the trip that was directly and reasonably related to the operation and use of the insured vehicle."[3]
Given the foregoing, I am of the opinion that although the meaning of "occupying" may be clear in the abstract, it becomes ambiguous when applied to the facts of this case. The trier of fact should determine whether, given the facts of the accident and the use of the vehicle, there was a causal relation between the injuries and the use of the vehicle so that Roberts was "occupying" the vehicle when she was injured. I would reverse the summary judgment for American National and remand this case to the trial court for further proceedings; therefore, I dissent.
NOTES
[1] "Relative" is defined in the policy as "a person living with you and related to you by blood, marriage, or adoption, including your ward or foster child, provided neither the relative nor the relative's spouse owns, in whole or in part, a car." Roberts testified in her deposition that she was not residing with her mother at the time of the accident and concedes that she was not a "relative" as that term is defined by the policy.
[2] See, e.g., Utica Mut. Ins. Co. v. Contrisciane, 504 Pa. 328, 336, 473 A.2d 1005, 1009 (1984) (adopting a four-pronged test requiring (1) that "there [be] a causal relation or connection between the injury and the use of the insured vehicle"; (2) that "the person asserting the coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it"; (3) that "the person must be vehicle oriented rather than highway or sidewalk oriented at the time"; and (4) that "the person must also be engaged in a transaction essential to the use of the vehicle at the time"); Kentucky Farm Bureau Mut. Ins. Co. v. McKinney, 831 S.W.2d 164 (Ky.1992) (adopting same test); Tata v. Nichols, 848 S.W.2d 649 (Tenn.1993) (adopting same test); Roden v. General Cas. Co. of Wisconsin, 671 N.W.2d 622 (S.D.2003) (adopting same test); General Accident Ins. Co. of America v. Olivier, 574 A.2d 1240 (R.I.1990) (adopting same test); Butzberger v. Foster, 151 Wash.2d 396, 89 P.3d 689 (2004) (adopting a three-pronged test requiring(1) that there be a causal relationship or connection between the injury and the use of the insured vehicle; (2) that the person asserting the coverage must be in reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; and (3) that the person must also be engaged in a transaction essential to the use of the vehicle); D'Amour v. Amica Mut. Ins. Co., 153 N.H. 170, 891 A.2d 534 (2005) (adopting the "vehicle-orientation standard"); and Simpson v. United States Fid. & Guar. Co., 562 N.W.2d 627, 631 (Iowa 1997) (holding that uninsured-motorist coverage extended to anyone "in close proximity to the [covered vehicle]" and "engaged in an activity relating to the use of the [covered vehicle].").
[3] See § 6-5-332, Ala.Code 1975, "Good Samaritan Rule", and Beasley v. MacDonald Eng'g Co., 287 Ala. 189, 194, 249 So.2d 844, 847 (1971) ("[Good Samaritan] statutes, immunize volunteers acting gratuitously from any common-law liability for their acts or omissions at the scene of accidents or in emergencies.").